STATE OF WEST VIRGINIA

*v.*

CHARLES MORAN

(No. 14496)

Decided December 18, 1981.

*S. J. Angotti, David L. Solomon,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Silas B. Taylor, Laurie J. Garrigan* Assistant Attorneys General, for defendant in error.

PER CURIAM:

Charles Moran appeals from a conviction of unlawful wounding in the Circuit Court of Harrison County. As our review of the record, briefs, and oral arguments convinces us that Moran received a fair trial and that his assignments of error lack merit[1], we affirm.

Moran's primary assignments of error are premised on the alleged failure of the State and the trial court to provide him a hearing on any of his twenty-four pre-trial motions and an alleged prejudicial denial of pre-trial

---

[1] Several assignments of error made in Moran's Petition for an Appeal were not argued in his brief, and, accordingly, we deem them waived.

discovery. Moran also contends he was entitled to a hearing on his motion to disqualify the circuit court judge under the provisions of an administrative rule promulgated by this Court to govern such motions.

Moran's argument that the trial court erred in not ruling on his pre-trial motions is not well-taken. Proper consideration of this issue requires us to consider some of the basic facts surrounding the crime and particularly the totality of circumstances under which defense counsel represented Moran.[2]

Moran was indicted as a result of an incident occurring on November 3, 1976, in which he allegedly shot a man named John Wolfe who, though seriously wounded, lived to testify against him. During the same incident, Moran's companion that evening, Calvin "Toehead" Atkins, shot and killed a Mr. Joe Shaffer, the brother of the mayor of Clarksburg. Because they injured different individuals, Moran and Atkins were indicted and tried separately. Both were represented by the law firm of Solomon and Angotti, counsel for Moran in this appeal. Atkins was tried first and from this representation, defense counsel learned most, if not all, of the relevant facts bearing on Moran's commission of the crime.

Defense counsel filed twenty-five pre-trial motions in the Atkins' case. Twenty-three of these motions were essentially identical to the motions filed in Moran's case. The State filed answers to the motions filed on behalf of Atkins, and the trial court held a hearing, granting some and denying others. During the hearing, the trial court ruled on all matters raised by Atkins in his motions for a bill of particulars and for discovery as well as other

---

[2] Upon filing its brief, the State has urged this Court to consider a transcript, documents, and orders generated in the case of *State v. Atkins*, 163 W. Va. 502, 261 S.E.2d 55 (1979), contending they contain facts which are material to the issues raised in this appeal. We agree and grant the State's Motion to Supplement the Record. On our own motion, we also consider the reproduced record in the *Atkins* appeal as a part of the record in this proceeding. That record includes an eight page order regarding pre-trial motions.

matters. At the close of the hearing, defense counsel moved for a continuance for Moran which was not contested by the State. Defense counsel then informed the court that Moran's case could be expedited considerably because the motions in both cases were substantially the same and the trial court's rulings as to Atkins could be applied to Moran as well. Defense counsel then indicated a desire to argue the validity of the Moran indictment, and the trial court afforded an opportunity to argue the point then or later, and defense counsel requested a postponement. The trial court directed defense counsel to prepare an order. That order continued Moran's case until the next term and continued the hearing on the pre-trial motions until a later date to be scheduled by the court.

In April, 1977, Atkins was tried. During State's case in chief, all the witnesses who would later testify against Moran were put on the stand except for the medical witnesses. During the trial there were many references to Moran and John Wolfe. In the Atkins case, defense counsel was provided the names of all investigators involved with the shooting, evidence found on John Wolfe's person, photographs of the crime scene, eyewitness testimony concerning Wolfe, the entire substance of John Wolfe's testimony, and a fingerprint test done for Moran. Moran testified for Atkins at the trial. The State's answers to Atkins' pre-trial motions, also provided defense counsel substantial evidence connected with both cases.

The State also answered Moran's motions for discovery and a bill of particulars, denying certain requests on the grounds that they had been refused by the court. The defense was provided a list of exhibits and a list of the State's witnesses. At the commencement of Moran's trial, no motion was made for a hearing on any of his motions nor was there any assertion of a denial of pre-trial discovery. These matters were first raised by defense counsel in a motion for a judgment of acquittal. On the record as summarized above, defense counsel argues that the trial court had an absolute duty to dispose of all pre-trial

motions and to ensure the case was in a proper posture for trial.

Moran's arguments are not supported by the law or the facts. He was not denied a hearing on all of his pre-trial motions since there was in effect a joint hearing on the Atkins and Moran cases, and defense counsel stated on the record that the motions were susceptible of identical rulings. Defense counsel cannot be permitted to benefit from the order providing that his pre-trial motions would be continued and heard on a later date to be set by the court. Defense counsel must assume the burden of bringing these motions to the attention of the trial court. If defense counsel desired a hearing on certain motions, they should have asked for one. As we said in *State v. Grimmer*, 162 W. Va. 588, 251 S.E.2d 780, 785 (1979): "When there is an opportunity to speak, silence may operate as a waiver of objections to error and irregularities at the trial which, if reasonably made and presented, might have been regarded as prejudicial." In the circumstances of this case, defense counsel's failure to demand a hearing as to certain of his pre-trial motions constitutes a waiver.

Moran's second major argument-that he was prejudiced by the denial of proper pre-trial discovery-is without merit. From the discussion of the last assignment of error, it is apparent that Moran had substantial pre-trial discovery by virtue of his representation of Atkins. His first specific claim of prejudice stems from the trial court's refusal to permit defense counsel to see a master police report while the State was putting on its evidence in chief. The State conceded in argument that the police report in question was not provided to the defense but argued it was not reversible error.

The police report was not discoverable under West Virginia's discovery statute, *W.Va. Code*, 62-1B-2. Under syllabus point 1 of *State v. Dudick*, 158 W. Va. 629, 213 S.E.2d 458 (1975), pre-trial discovery is within the discretion of the trial court, and the defense is generally not entitled to a police report unless it has been used at trial to refresh recollection. Specifically, syllabus point 1 states:

> "Subject to certain exceptions, pre-trial discovery in a criminal case is within the sound discretion of the trial court; however, after a witness has testified from notes used to refresh his recollection, the defense is absolutely entitled to inspect the notes from which the witness testified and must be given a reasonable opportunity to prepare cross-examination."

Counsel has not alleged nor does the record reveal that the police report was used by any witness to refresh his recollection. Furthermore, defense counsel makes no attempt to demonstrate prejudice or surprise arising from the denial.

Moran next complains that he was not allowed to examine the written statements of Officers Lake and Mazza until after they had testified on direct examination. This point is without merit. The defense was permitted to examine and use these statements on cross-examination. *State v. Dudick, supra. See also, State v. Sette,* 161 W. Va. 384, 242 S.E.2d 464 (1978).

Moran also contends he was not provided an exculpatory pathology report prior to trial. Again, defense counsel's conclusory allegations are not supported by the facts. We fail to see how the report could be fairly characterized as exculpatory. From our reading of the record, the pathology report relates only to whether John Wolfe was shot by a gun, a matter which was not in factual dispute. Furthermore, on cross-examination, the pathology report was made available to the defense.

There is also a claim of prejudice arising from the failure to receive the results of a fingerprint analysis prepared by the Criminal Investigation Bureau. This report showed that there were no latent prints of value on two pistols. The defense knew of the results of the fingerprint reports prior to Moran's trial, because the report was provided to defense counsel in the Atkins trial. We, therefore, find no error here.

The final matter relating to discovery is an allegation that the defense did not receive the results of a paraffin

test that would have shown whether the defendant had recently fired a firearm. It does not appear that the defense received a copy of the results of this test, but no argument is made as to prejudice and, in view of the fact that Moran testified at trial that he fired a weapon during the incident, we find none.

Error is also assigned concerning the manner in which the trial judge handled a motion to disqualify himself. Moran's contention is the trial judge did not properly follow the administrative rule promulgated by this Court for handling recusal motions. The rule relied on was appended to the opinion in *Stern Brothers, Inc. v. McClure*, 160 W. Va. 567, 236 S.E.2d 222 (1977), handed down on July 12, 1977. This rule generally provides that upon the filing of verified motion for disqualification, accompanied by a certificate of good faith, the circuit judge can proceed no further in the matter and must transfer a copy of the motion and certificate to the Chief Justice of this Court, together with a letter advising that he will recuse himself or that a hearing will be required on the motion.

The *Stern Brothers* rule is not applicable to this case because it had not been promulgated at the time the recusal motion was made in March of 1977. After the administrative rule was promulgated, the defense did not make any effort to take advantage of the new procedures, though they had ample time to do so, since the Moran trial did not begin until July 1978, and accordingly the defense cannot complain now.

We have carefully considered Moran's other arguments, including several alleged instructional errors, and find no grounds for reversal.

For the foregoing reasons, the judgment of the Circuit Court of Harrison County is affirmed.

*Affirmed.*